UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
OHIO SECURITY INSURANCE COMPANY,

        Plaintiff,

        -against-

SELECTIVE INSURANCE COMPANY OF THE
SOUTHEAST and TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,

        Defendants.
-----------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**M A D A M S / S I R S :**

        Plaintiff OHIO SECURITY INSURANCE COMPANY ("Ohio Security"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendants SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST ("Selective") and TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA ("Travelers"), alleges as follows:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000.00 exclusive of costs.

    2.    At all times hereinafter mentioned, Ohio Security was, and still is, a stock insurance company organized under the laws of the State of New Hampshire, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.

    3.    At all times hereinafter mentioned, Ohio Security was, and still is, an insurance company duly authorized to conduct business within the State of New York.

1

4. At all times hereinafter mentioned, Selective was, and still is, a stock insurance company organized under the laws of the State of Indiana, with its principal place of business located at 40 Wantage Ave, Branchville, New Jersey 07890.

5. At all times hereinafter mentioned, Selective was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6. At all times hereinafter mentioned, Travelers was, and still is, a stock insurance company organized under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut 06183.

7. At all times hereinafter mentioned, Travelers was, and still is, an insurance company duly authorized to conduct business within the State of New York.

8. This Court has venue over this matter pursuant to 28 U.S.C. § 1391(b)(2); a substantial part of the events or omissions giving rise to the claim occurred in this District.

## SUBSTANTIVE ALLEGATIONS

**A.  The Underlying Action**

9. On or about October 8, 2021, Gilson Ramos ("Ramos") commenced an action entitled <u>Gilson Ramos v. School Street Housing Development Fund Corp</u>, Index No. 813750/2021E, which is currently pending in the Supreme Court of the State of New York, County of Bronx (the "Underlying Action").

10. On or about January 27, 2022, Ramos amended his complaint in the Underlying Action to include Mountco Construction and Development Corp. ("Mountco") as a defendant.

11. On or about April 7, 2022, Mountco commenced a third-party action in the Underlying Action against Jan Construction Services Corp. ("Jan") (the "First Third-Party Action").

12. On November 3, 2022, Ramos amended his complaint in the Underlying Action for a second time, adding 10-28 Yonkers, L.P ("10-28") as a defendant in addition to Mountco and School Street Housing Development Fund Corp ("School Street").

13. On March 6, 2024, School Street, Mountco, and 10-28 commenced a third-party action in the Underlying Action against C. Williams Electrical Construction, Inc. ("Williams") (the "Second Third-Party Action").

14. On June 12, 2024, School Street, Mountco, and 10-28 commenced a third-party action in the Underlying Action against J&S Mechanical, Inc. ("J&S") (the "Third Third-Party Action").

15. In the Underlying Action, Ramos alleges that, on or about September 29, 2021, he fell off a ladder while performing work at 10 School Street, Yonkers, New York (the "Premises").

16. In the Underlying Action, Ramos further alleges that School Street, 10-28, and/or Yonkers owned, operated, managed, or was a contractor at the Premises.

17. In the Underlying Action, Ramos further alleges that School Street, 10-28, and/or Yonkers had retained his employer, Jan, to provide construction work at the Premises.

18. In the Underlying Action, Ramos alleges causes of action against School sounding in Negligence Sections 200, 240(1), 240(2), 240(3), and 241(6) of the Labor Law, and Rule 23 of the Industrial Code.

19. In the First Third-Party Action, Mountco alleges that that Jan "contractually assumed the obligation to defend, indemnify, and obtain insurance" for Mountco for claims arising out of the work performed by Jan and its subcontractors at the Premises.

20. The First Third-Party Complaint alleges causes of action sounding in Contractual and Common Law Indemnification, Contribution, and Breach of Contract for failure to procure insurance.

21. On or about June 30, 2022, a Notice of Discontinuance of the First Third-Party Action against Jan without prejudice was filed.

22. In the Second Third-Party Action, School Street, 10-28, and Mountco allege that, prior to September 29, 2021, Mountco and Williams entered into a Subcontract wherein Williams was to "indemnify, defend, and hold harmless", School Street, 10-28 and Mountco for damages caused by the "negligent acts or omissions of…" Williams.

23. In the Third Third-Party Action, School Street, 10-28, and Mountco allege that, prior to September 29, 2021, Mountco and Williams entered into a Subcontract wherein J&S was to "indemnify, defend, and hold harmless", School Street, 10-28 and Mountco for damages caused by the "negligent acts or omissions of…" J&S.

**B.   The Contracts**

24. On or about August 5, 2019, 10-28 and School, each identified as "Owner", and Mountco as "Contractor" entered into a Standard Form of Agreement Between Owner And Contractor, for demolition and new construction at the Premises (the "Master Contract").

25. The Master Contract provides regarding Insurance, as amended by Rider B, in relevant part, as follows:

The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor, the Owner, HHAC and the OMH from claims set forth below which may arise out of or result from the Contractor's Operations and completed operations under the Contract and for which the Contractor may be liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

\* \* \*

2. Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

\* \* \*

4. Claims for damages insured by usual personal injury liability coverage;

\* \* \*

Contractor's Insurance Coverages

\* \* \*

3. Commercial General Liability Insurance. Not less than $10,000,000 combined single limit of liability for bodily injuries, death and property damage, and personal injury resulting from any one occurrence, including the following coverages:

c. Broad Form Comprehensive General Liability Endorsement to include Blanket Contractual Liability (specifically covering, but not limited to, the contractual indemnification and hold harmless obligations assumed by the Contractor in Subparagraph 3.18.1 of the General Conditions), Personal Injury (with employment and contractual exclusions deleted) and Broad Form Property Damage coverage;

\* \* \*

6. Except for the Workers' Compensation Insurance and Contractor's Equipment Floater, the insurance coverage shall name the Owner, Concern for Independent Living Inc., SJMC, Inc., the

5

> Architect, the New York State Office of Mental Health, HHAC and the State of New York, and the Owner's Project Representative (if designated), and the officers, agents, directors, partners and employees of each of them as additional insured parties on a primary, non-contributory basis.
>
> * * *
>
> The Contractor shall require all Subcontractors to carry similar insurance coverages and limits of liability as required pursuant to Subparagraph 11.1.1, adjusted, with the express written consent of the Owner, HHAC and OMH, by the nature of the Subcontractor's operations. Upon request by the Owner, the Contractor shall provide the Owner with certificates evidencing such coverages at least seven (7) business days before each subcontractor commences work at the Project site.
>
> * * *
>
> § 11.1.4   Modify the entire Section to read: "The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (I) the Owner, HHAC, DASNY, OMH, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner, HHAC, OMH and DASNY as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

26.  On or about September 17th, 2019, Mountco as "Contractor" and J&S as "Subcontractor" entered into a Subcontract for work at the Premises ("J&S Subcontract").

27.  The J&S Subcontract provides, as to insurance, in relevant part, as follows:

> § 13.1 In addition to any requirements set forth below and in the Prime Contract, the Subcontractor shall purchase and maintain insurance of the types of coverage and limits of liability as will protect the Subcontractor from claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract as are set forth on Exhibit B.
>
> * * *

6

> § 13.4 The Subcontractor shall cause the commercial liability coverage required by the Subcontract Documents to include: (1) the Contractor, the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's operations; and (2) the Contractor as an additional insured for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's completed operations.

28. On or about September 18th, 2019, Mountco as "Contractor" and Williams as "Subcontractor" entered into a Subcontract for work at the Premises ("Williams Subcontract").

29. The Williams Subcontract contains an addendum entitled "Exhibit B Insurance Requirements" which provides in relevant part, as follows:

> Insurance. In addition to any requirements set forth in the General Conditions the Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:
>
> * * *
>
> The Subcontractor's insurance shall be primary and non-contributory and with respect to each type of insurance, licensed to do business in the State of New York, and A rated, and the Contractor's insurance shall be excess. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the ISO's form and that no policy provision shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Owner's status as additional insured.
>
> Commercial General Liability (GCL) in order to protect against claims brought by members of the public for bodily injury, personal injury or damage of property and alleged to have arisen out of the Premises and operations performed in connection with this Subcontract. coverage with limits of insurance of not less than $1,000,000 each occurrence and $2,000,000 Annual Aggregate, with a maximum allowable retention on the CGL policy of $10,000.
>
> * * *

> e) Contractor, Owner and all other parties required of the Contractor, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 10/01 & CG 20 37 10 01 or an endorsement providing equivalent or broader coverage to the additional insureds. Coverage for the additional insureds shall apply as primary and non-contributing Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds. The following are included as Additional Insured's on a primary and non-contributory basis before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds.
>
> Mountco Construction & Development Corp., 10-28 Yonkers L.P. and School Street Housing Development Fund Corporation; State of New York Homeless Housing and Assistance Corporation; Dormitory Authority of the State of New York; New York State Office of Mental Health; State of New York, Office of Temporary and Disability Assistance; Edelman Sutons Knox Wood/Architects LLP.

## C. The Insurance Policies

30. Ohio Security issued a Commercial General Liability policy, No. BKS (21) 60 36 26 87, with a policy period from October 3, 2020 to October 3, 2021, to Jan, as the Named Insured (the "Ohio Security Policy").

31. Ohio Security is currently providing School Street, 10-28, and Mountco a defense in the Underlying Action as additional insureds under the Ohio Security Policy.

32. The Ohio Security Policy, as amended by endorsement entitled COMMERCIAL GENERAL LIABILITY EXTENSION, has an applicable excess "Other Insurance" provision, which provides, in relevant part, as follows:

> Regardless of the written agreement between you and an additional insured, this insurance is excess over any other insurance whether primary, excess, contingent or on any other basis for which the additional insured has been added as an additional insured on other policies.

33. Upon information and belief, in compliance with the requirements of the Williams Subcontract, Williams obtained a Commercial General Liability policy, No. S2040992, with a policy period from October 2, 2020 to October 2, 2021, issued by Selective to Williams, as the first Named Insured (the "Selective Policy").

34. Upon information and belief, the Selective Policy an additional insured provision, pursuant to which School Street, 10-28, and Mountco qualify as additional insureds for the claims alleged in the Underlying Action.

35. Upon information and belief, in compliance with the requirements of the J&S Subcontract, J&S obtained a Commercial General Liability Policy, No. 6803K612639, with a policy period from June 29, 2021 to June 29, 2022, issued by Travelers to J&S, as the first Named Insured (the "Travelers Policy").

36. Travelers issued the Travelers Policy to J&S at its office located at 1016 Clay Avenue, Pelham Manor, New York 10803.

37. Upon information and belief, the Travelers Policy has an Each Occurrence Limit of $1,000,000.

38. Upon information and belief, Mountco, 10-28, and School Street qualify as an additional insured under the Travelers Policy for the claims alleged in the Underlying Action.

**D.   Tenders and Responses**

39. By letter dated February 14, 2024, Ohio Security tendered the defense and indemnity for School Street, 10-28, and Mountco for the Underlying Action to Selective.

40. By letter dated March 11, 2024, Selective disclaimed coverage to School Street, 10-28, and Mountco.

41. By letter dated May 6, 2024, Ohio Security tendered the defense and indemnity for School Street, 10-28, and Mountco for the Underlying Action to Travelers as insurer for J&S.

42. Travelers has failed and refused to respond to the tender of the defense and indemnity of School Street, 10-28, and/or Mountco.

43. By its failure to respond to the tender and its inaction, Travelers' conduct constitutes a denial of coverage for School Street, 10-28, and/or Mountco for the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

44. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "43" of this Complaint as if more fully set forth herein.

45. School Street, 10-28, and Mountco qualify as additional insureds under the Selective Policy for the claims alleged in the Underlying Action.

46. Selective owes School Street, 10-28, and Mountco each a duty to defend and indemnify for the claims alleged in the Underlying Action.

47. The Ohio Security Policy applies excess of the Selective Policy for School Street, 10-28, and Mountco for the claims alleged against them in the Underlying Action.

48. Although duly demanded, Selective has failed and refused to provide a primary defense and indemnification to School Street, 10-28, and/or Mountco for the claims alleged in the Underlying Action.

49. Ohio Security seeks a determination of its rights with regard to the Selective Policy, including a declaratory judgment that Selective was and is required to defend and indemnify School Street, 10-28, and Mountco for the Underlying Action under the Selective

Policy and that such coverage applies on a primary basis before coverage under the Ohio Security Policy applies to School Street, 10-28, and Mountco.

### AS AND FOR A SECOND CLAIM FOR RELIEF

50. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "49" of this Complaint as if more fully set forth herein.

51. Selective owed and owes School Street, 10-28, and Mountco a primary duty to defend under the Selective Policy for the claims alleged in the Underlying Action.

52. Although duly demanded, Selective has failed and refused to provide a primary defense and indemnification to School Street, 10-28, and Mountco for the claims alleged in the Underlying Action.

53. As a result of Selective's failure to acknowledge that it owes a primary duty to indemnify School Street, 10-28, and Mountco, Ohio Security was required to provide and pay for the defense of the claims alleged in the Underlying Action against School Street, 10-28, and Mountco.

54. As a result of the foregoing, Ohio Security is entitled to a money judgment against Selective in an amount to be determined by the Court, plus interest at the rate of 9% per annum.

### AS AND FOR A THIRD CLAIM FOR RELIEF

55. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "54" of this Complaint as if more fully set forth herein.

56. School Street, 10-28, and Mountco qualify as additional insureds under the Travelers Policy for the claims alleged in the Underlying Action.

57. Travelers owes School Street, 10-28, and Mountco each a duty to defend and indemnify for the claims alleged in the Underlying Action.

58. The Ohio Security Policy applies excess of the Travelers Policy for School Street, 10-28, and Mountco for the claims alleged against them in the Underlying Action.

59. Although duly demanded, Travelers has failed and refused to provide a primary defense and indemnification to School Street, 10-28, and/or Mountco for the claims alleged in the Underlying Action.

60. Ohio Security seeks a determination of its rights with regard to the Travelers Policy, including a declaratory judgment that Travelers was and is required to defend and indemnify School Street, 10-28, and Mountco for the Underlying Action under the Travelers Policy and that such coverage applies on a primary basis before coverage under the Ohio Security Policy applies to School Street, 10-28, and Mountco.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

61. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "60" of this Complaint as if more fully set forth herein.

62. Travelers owed and owes School Street, 10-28, and Mountco each a primary duty to defend under the Travelers Policy for the claims alleged in the Underlying Action.

63. Although duly demanded, Travelers has failed and refused to provide a primary defense and indemnification to School Street, 10-28, and Mountco for the claims alleged in the Underlying Action.

64. As a result of Travelers' failure to acknowledge that it owes a primary duty to indemnify School Street, 10-28, and Mountco, Ohio Security was required to provide and

pay for the defense of the claims alleged in the Underlying Action against School Street, 10-28, and Mountco.

65. As a result of the foregoing, Ohio Security is entitled to a money judgment against Travelers in an amount to be determined by the Court, plus interest at the rate of 9% per annum.

**WHEREFORE**, plaintiff OHIO SECURITY INSURANCE COMPANY demands judgment as follows:

A. On the First Claim for Relief, a declaratory judgment determining the respective rights and obligations of plaintiff OHIO SECURITY INSURANCE COMPANY and defendant SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST with respect to their liability insurance coverage obligations for School Street, 10-28, and Mountco for the Underlying Action, including a declaratory judgment that defendant SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST is required to defend and indemnify School Street, 10-28, and Mountco for the Underlying Action, and that such coverage for School Street, 10-28, and Mountco applies on a primary basis before coverage under the Ohio Security Policy applies to School Street, 10-28, and Mountco;

B. On the Second Claim for Relief, a money judgment in favor of plaintiff OHIO SECURITY INSURANCE COMPANY and against defendant SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, in an amount to be determined by the Court, plus interest; and

C. On the Third Claim for Relief, a declaratory judgment determining the respective rights and obligations of plaintiff OHIO SECURITY INSURANCE COMPANY and defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA with respect

13

to their liability insurance coverage obligations for School Street, 10-28, and Mountco for the Underlying Action, including a declaratory judgment that defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA is required to defend and indemnify School Street, 10-28, and Mountco for the Underlying Action, and that such coverage for School Street, 10-28, and Mountco applies on a primary basis before coverage under the Ohio Security Policy applies to School Street, 10-28, and Mountco;

        D.     On the Fourth Claim for Relief, a money judgment in favor of plaintiff OHIO SECURITY INSURANCE COMPANY and against defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, in an amount to be determined by the Court, plus interest; and

        E.     Granting plaintiff OHIO SECURITY INSURANCE COMPANY recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated:   White Plains, New York
           October 24, 2024

                                                      Yours, etc.,

                                                      JAFFE & ASHER LLP

                                                      By: _____
                                                          Marshall T. Potashner, Esq.
                                                    Attorneys for Plaintiff
                                                    OHIO SECURITY INSURANCE COMPANY
                                                    445 Hamilton Avenue, Suite 405
                                                    White Plains, New York 10601
                                                    (212) 687-3000